Cordell MOODY, Plaintiff–Appellant,

v.

Robert MILLER, Defendant–Appellee.

No. 88–2628.

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1989.

Rehearing Denied March 1, 1989.

Cordell Moody, Huntsville, Tex., pro se.

No appearance for defendant-appellee.

Before WILLIAMS, HIGGINBOTHAM and SMITH, Circuit Judges.

PER CURIAM:

 In this, approximately his twenty-third section 1983 complaint filed in the last three years, Cordell Moody, a Texas Department of Corrections ("TDC") prisoner proceeding *in forma pauperis* (IFP), raises additional issues concerning the conditions of his confinement.[1] In his complaint, Moody alleges, *inter alia*, that the defendant, TDC officer Robert Miller, and other prison officials not named as defendants but against whom Moody pleads facts indicating his intent to seek redress, deprived him of his due process rights under the fourteenth amendment when they held, in his absence, a hearing on disciplinary charges against Moody. Moody appeals the district court's dismissal of his action prior to service pursuant to 28 U.S.C. § 1915(d).[2] We affirm.

I.

We state the facts as alleged in Moody's complaint and response to the court's order to submit a more definite statement of facts, neither of which is a model of clarity. On September 28, 1987, Moody, who was looking for a supervisor to whom to complain about a denial of commissary privileges after being told to do so by Building Major Kinker, was written up on a disciplinary charge of being "out of place," which we take to mean that Moody, in violation of TDC rules, was someplace where he was not supposed to be.

A disciplinary hearing was held on the charge on October 26, 1987. Moody received notice of the hearing, but on the date of the hearing could not attend because he was in the prison hospital with, among other things, a hernia. Prison officials, apparently aware that Moody was in the hospital, held the hearing in his absence. At the hearing, Moody was represented by counsel, who provided the hearing officers with a written statement from Moody giving his version of events and was given the opportunity to call witnesses, although Major Kinker never testified. After the hearing, Moody was found guilty of the charge and given a penalty in the form of loss of his commissary, recreation, and visitation privileges for thirty days.

On December 22, 1987, Moody filed this action. After obtaining from Moody a more definite statement of the facts alleged in his complaint, the district court, pursuant to section 1915(d), dismissed the complaint with prejudice prior to service on any of the defendants, and imposed sanctions in the amount of $275 for court costs.[3]

II.

 Section 1915(d) authorizes a court to dismiss an IFP complaint "if satisfied that the action is frivolous or malicious." Under the law of this circuit, an IFP proceeding may be dismissed as frivolous if (1) the claim has only a slight chance of ultimate success; (2) the claim has no arguable ba-

---

1. Almost all of Moody's complaints—based upon alleged deprivations of his rights, *inter alia*, to use of the telephone, not to be required to sleep in a lower bunk, not to be required to walk barefoot across a cold floor, and not to be issued pants that are too small—have been dismissed as frivolous, and he has incurred over $980 in sanctions levied by various courts in the Southern District of Texas. We do not recount his past history with the federal courts for merely comedic purposes; rather, we take Moody's lack of success in substantiating past claims into account in assessing Moody's credibility in the instant case. *See Cay v. Estelle*, 789 F.2d 318, 326 (5th Cir.1986).

2. In *Moody v. Hughes*, 849 F.2d 1469 (5th Cir. 1988) (per curiam) (unpublished), we prohibited

Moody from prosecuting any more IFP appeals, absent certification of his good faith by the district court, until he paid the sanctions in six of these cases. The instant dismissal order and notice of appeal were filed before the decision in *Moody v. Hughes;* hence, we consider this appeal to fall outside of the prohibition.

3. In his complaint, Moody also alleges that various TDC officials (1) squeezed his toothpaste out of the tube, (2) took his comb and looked at his legal work, and (3) "kitch, kitt[ed]" his leg while holding him against a wall. To the extent that these allegations constitute separate claims, we affirm the dismissal of them for the reasons given by the district court.

sis in law or fact; (3) it is clear that the plaintiff can prove no set of facts in support of his claim. *See Cay v. Estelle,* 789 F.2d at 326. Because we conclude that Moody's due process claim has no arguable basis in law, dismissal of his complaint under section 1915(d) was proper.

■ In order to frame properly the issue presented on appeal in this case, it is important to determine exactly what Moody does and does not allege. First, he does not allege that TDC officials excluded or otherwise prevented him from attending the hearing, either by purposefully scheduling it at a time when he could not attend, or by physically restraining him from being present. Rather, Moody alleges merely that he was, through no fault of prison officials, unable to attend. Second, we note that, with the exception of Moody's absence from the hearing, TDC officials afforded him all of the hallmarks of due process, including notice, the right to submit a written statement, the right to be represented by counsel, and the right to call witnesses.

In essence, Moody's claim is that due process requires that if a prisoner is unable to attend a disciplinary hearing, prison officials must either postpone the hearing until such time as the prisoner can be present or alter the normal hearing process in such a manner as to enable the prisoner to attend. Concluding that the requirements of due process were met in this case, we reject his argument.

There is certainly authority for the proposition that the due process clause requires that prisoners must be given, in most cases, the opportunity to attend disciplinary hearings in which the prisoner is threatened with the loss of good-time credits or the imposition of solitary confinement. In *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court implied, or at least assumed, that prisoners did indeed have such a right. *See id.* at 566, 94 S.Ct. at 2979 (holding that a prisoner "facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense").

Other lower courts, similarly, have assumed that the due process requirement of an "opportunity to be heard" includes the right to appear personally before the decisionmaker; indeed, that assumption forms the basis for one of the remedial measures imposed by Judge Justice, in the landmark *Ruiz* litigation, for the conduct of disciplinary hearings in TDC:

> [TDC] shall forthwith conform their disciplinary practices to the requirements of *Wolff v. McDonnell* [ ] for proceedings in which prisoners might be subjected to solitary confinement, loss of good time or demotion in time-earning class. To assure that Wolff and due process requirements are in fact observed:
>
> . . . .
>
> 9. Prisoners charged with rule violations shall be present at disciplinary hearings unless their behavior during the hearing justified their exclusion. If a prisoner refuses, or is unable, to appear at the hearing, the hearing may be conducted in the prisoner's absence.

*See Ruiz v. Estelle,* 666 F.2d 854, 867–69 (5th Cir.1982) (district court order published as an appendix to the court's opinion), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

Because, under TDC rules, any disciplinary violation may be cumulatively punishable by solitary confinement or loss of good-time credits, the *Wolff* requirements are applicable to this case. *See Ruiz v. Estelle,* 503 F.Supp. 1265, 1350–51 (S.D. Tex.1980), *motion to stay granted in part, denied in part,* 666 F.2d 854 (5th Cir.1982), *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983). On this record, however, there is no evidence that TDC officials refused to allow Moody to attend the hearing; rather, the record reveals only that TDC officials refused to reschedule the hearing or otherwise modify it when it became apparent that Moody, through no fault of prison officials, could not attend. Thus, the question presented in this case is not whether a prisoner must be given the opportunity to attend the hearing, but rather whether a prisoner's right to attend the hearing is "absolute" in the sense that the

hearing cannot under any circumstances be conducted without him.

 We hold that a prisoner does not have such a right. If, through no fault of prison officials, a prisoner is unable or refuses to attend a disciplinary hearing, due process requires no more than that the hearing be held in accordance with all of the other requirements of due process that are called for under the circumstances. Due process requires only that the government operate under procedures that give a person a fair *opportunity* to ensure that the governmental decision affecting that person's life, liberty, or property is just; it does not mean that the government, in an effort to make sure that everyone does what is in his or her best interests, must see to it that each person takes advantage of these opportunities.

Thus, an agency that seeks to terminate a person's receipt of governmental benefits need not forego making a decision on the termination if the person waives the right to a hearing by failing to attend a scheduled hearing of which he or she had notice. Likewise, prison officials should not be required to delay the enforcement of prison disciplinary rules because the affected prisoner, through no fault of prison officials, happens to be unavailable; rather, recognizing that "it may be essential that discipline be swift and sure," *Wolff*, 418 U.S. at 563, 94 S.Ct. at 2978, prison officials may, as long as the prisoner is afforded other rights sufficient to safeguard due process interests, hold the disciplinary hearing and enforce their rules accordingly.

Thus, that Moody was not present at the hearing does not mean that his due process rights were violated, unless some other requirement of due process—notice, the opportunity to call witnesses, or the opportunity for a hearing itself—was absent. We conclude that the hearing in this case was constitutionally adequate. In addition to receiving written notice of the charge, Moody was able to submit a written statement and call witnesses on his behalf. Moreover, he was represented at the hearing by counsel, something which *Wolff* specifically rejected as being constitutionally

required. *See* 418 U.S. at 569, 94 S.Ct. at 2981. In these circumstances, due process requires no more.

### III.

 We thus hold that, because Moody has not made out a valid claim that TDC officials violated his due process rights, the district court properly dismissed his complaint prior to service under section 1915(d). To the extent that Moody also challenges the district court's imposition of sanctions, we hold that, given the frivolous allegations made in his complaint, and mindful of Moody's past history with the federal courts, the imposition of sanctions was a valid exercise of the court's discretion. *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 872 (5th Cir.1988) (en banc).

AFFIRMED.