Freddie T. BATTLE, Plaintiff–Appellant,

v.

Thomas L. BARTON, Darryl G. Spencer, Defendants–Appellees.

No. 91–3636

Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

Sept. 2, 1992.

Freddie T. Battle, pro se.

Clara E. Smith, Jacksonville, Fla., for defendants-appellees.

Before FAY, KRAVITCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-appellant Battle appeals the district court's grant of summary judgment to defendant-appellees Barton and Spencer on plaintiff's civil rights action under 42 U.S.C. § 1983. Battle, currently incarcerated in the Florida State Prison, sued Barton, the Prison Superintendent, and Spencer, a Correctional Officer at the Prison, for violations of his Fifth and Fourteenth Amendment rights stemming from a disciplinary hearing from which Battle, the accused, was removed after refusing to state his name and prison number for the hearing panel. The district court held that neither Battle's Fifth nor his Fourteenth Amendment rights were violated by the

prison officials holding the hearing. We affirm.

## I.  BACKGROUND AND COURSE OF PROCEEDINGS

On or about June 4, 1990, Battle, an inmate of the Florida State Prison, was found by Correctional Officer T.A. Henderson to be in possession of loose coupons, which, under prison rules, are considered to be contraband. Officer Henderson subsequently submitted a disciplinary report charging Battle with possession of contraband in violation of Prison Rule 3–8 ("Possession of Negotiable"). J.I. Minshew, an investigator for Florida State Prison, investigated the incident; Battle declined staff assistance in responding to this charge, and named three inmates as witnesses to the encounter between himself and Officer Henderson. Statements were taken from these inmates. Battle himself also prepared a written statement.

On June 11, 1990, a disciplinary hearing was held before a three-person disciplinary panel. Although Battle did not intend to testify at the hearing, he appeared at the hearing and proffered his written statement in lieu of live testimony. Officer Henderson did not appear at the hearing, but did submit an affidavit. At an early stage of the proceedings, the panel ordered Battle's removal from the hearing. An incident report executed by the panel Chairman provides an account of the events leading to this removal:

> Inmate Battle entered the hearing room and stood before the Disciplinary Team. As Chairman of the Disciplinary Team, I ordered Inmate Battle to state his name and number. Battle refused to do so stating, "You know my name and number." Again, I ordered Battle to state his name and number and he refused stating, "I don't have to give you my name and number, you know who I am." I ordered him a third time and he stated, "You know my name is Freddie Battle."

> I then ordered him to state his number and he refused, stating "You know what my number is." I then ordered Inmate Battle to be removed from the hearing based on his intentional behavior aimed at interfering with the proceeding of the Disciplinary Hearing.[1]

Battle does not contest this factual recital.

At the close of the hearing, Battle was found to be in violation of Prison Rule 3–8, and was given a penalty of disciplinary confinement and a 30–day reduction of gain time. The report issued by the panel indicated that it "considered the investigation and witness statements were read at the hearing." Battle contends that the Team did not consider his written statement; appellees dispute this contention.

Battle then filed a *pro se* complaint under 42 U.S.C. § 1983 in the Middle District of Florida against appellee Barton, the Prison Superintendent, and appellee Spencer, the Correctional Officer who acted as the panel Chairman. Battle alleged that he was denied his Fifth and Fourteenth Amendment rights as a result of his removal from his disciplinary proceeding. Specifically, Battle contended that (1) he was denied his Fifth Amendment privilege against self-incrimination when he was penalized for not giving the Disciplinary Team his name and prison number; and that (2) he was denied his Fourteenth Amendment right to procedural due process by virtue of his removal from the hearing, and by virtue of the Team's failure to consider his written statement as part of the evidence.

The district court granted summary judgment in favor of the appellees, *Battle v. Barton et al.*, Civ. No. 90–1044–Civ–J–12 (M.D.Fla. June 27, 1991) (hereinafter "June 27 Order"), holding that the procedures employed by the prison authorities complied with the due process standards announced by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1976). The court also rejected

---

**1.** Prison Rule 33–22.006(4) states as follows:

> The inmate charged shall be present at the disciplinary hearing unless substantial reasons precluding his presence exist.... If the inmate's disruptive conduct makes it necessary to remove him from the room, the hearing shall be conducted in his absence.

Battle's Fifth Amendment claim. In support of its decision, the district court noted that prison authorities retain wide discretion in matters of internal prison administration, and that the panel's decision to remove Battle from his hearing did not constitute an abuse of that discretion. Plaintiff appeals.

## II.  STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Although a court must resolve all reasonable doubts in favor of the non-moving party, *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987), "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Thus, "the non-moving party ... bears the burden of coming forward with sufficient evidence on *each element* that must be proved." *Earley v. Champion International Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III.  ANALYSIS

### A.  Plaintiff's Fifth Amendment Claim

█ Battle alleges that his Fifth Amendment privilege against self-incrimination was violated because he was penalized for his refusal to give his name and prison number to the panel at the June 11 hearing. This contention is without merit.

In *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Supreme Court stated that, although prison disciplinary hearings are not criminal proceedings, the Fifth Amendment's privilege against self-incrimination applies to such disciplinary hearings and protects prisoners from attempts by prison authorities to compel testimony "that might incriminate [the

prisoner] in later criminal proceedings...." *Baxter*, 425 U.S. at 316, 96 S.Ct. at 1557.

At the same time, an individual seeking to invoke successfully his Fifth Amendment privilege must be faced with "substantial hazards of self-incrimination." *California v. Byers*, 402 U.S. 424, 429, 91 S.Ct. 1535, 1538, 29 L.Ed.2d 9 (1971). These hazards must be "real and appreciable" and not merely "imaginary and unsubstantial." *Marchetti v. United States*, 390 U.S. 39, 48, 88 S.Ct. 697, 702, 19 L.Ed.2d 889 (1968) (quoting *Rogers v. United States*, 340 U.S. 367, 374–75, 71 S.Ct. 438, 442–43, 95 L.Ed. 344 (1951)). *See also Doe v. United States*, 487 U.S. 201, 207, 108 S.Ct. 2341, 2345–46, 101 L.Ed.2d 184 (1988) (compelled testimony must have potentially incriminating effect to implicate Fifth Amendment privilege). Further, "[t]he witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say so does not of itself establish the hazard of incrimination. It is for the court to decide whether his silence is justified...." *Hoffman v. United States*, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

The questions that Battle refused to answer do not implicate Battle's Fifth Amendment rights because Battle was not faced with substantial hazards of self-incrimination as a result of the panel's questions. These questions merely sought Battle's name and prison number: there was no criminal case pending against Battle, and the questions were asked less for informational purposes than for purposes of formality. In addition, Battle himself never asserted the privilege in response to the panel's questions. In short, there is no indication that Battle's refusal to answer the panel's questions was in any way predicated upon his invocation of his Fifth Amendment privilege, or his fear that his answers might be self-incriminating.

### B.  Plaintiff's Due Process Claim

█ Battle also claims that he was denied due process by virtue of the disciplinary panel's refusal to consider his written

statement in rendering its decision, and by virtue of his exclusion from his hearing.

Battle's first contention has no merit. The written report following the hearing states that the "witness statements were read aloud at the hearing." One must assume that Battle's own statement was among those read aloud at the hearing. Battle disputes this contention, but provides no evidence in the form of affidavits or otherwise to suggest that his statement was not considered. Thus, Battle has not made the necessary showing to preclude summary judgment against him on this claim.

Battle's claim that he was denied procedural due process by virtue of his removal from the disciplinary hearing merits greater consideration.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court set forth the due process rights of a prison inmate at a disciplinary proceeding. Although the Court held that such prisoners do not enjoy the full panoply of due process safeguards, it also held that a prisoner is entitled to receive written notice of the charges against him at least 24 hours in advance of the hearing; to call witnesses and present documentary evidence in his defense, provided that doing so will not be unduly harmful to institutional safety or correctional goals; and to receive a written statement setting forth the disciplinary board's findings of fact. *Wolff*, 418 U.S. at 563–66, 94 S.Ct. at 2978–79.

The *Wolff* Court did not specifically refer to a prisoner's right to attend his own disciplinary hearing. Several courts, however, have indicated that such a right is implicit in the prisoner's right to call witnesses and present documentary evidence at the hearing, *Moody v. Miller*, 864 F.2d 1178, 1180 (5th Cir.1989); *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir.), *cert. denied*, 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988) (paraphrasing *Wolff* to include among prisoner's due process rights "the opportunity to appear at the hearing"), as well as in the prisoner's right to advance notice of the hearing. *Shabazz v. Lungen*, 1990 WL 91758, 1990 U.S.Dist.

Lexis 7579 (S.D.N.Y.1990); *Malik v. Tanner*, 697 F.Supp. 1294, 1302 (S.D.N.Y.1988); *Finney v. Mabry*, 528 F.Supp. 567, 574 (E.D.Ark.1981). *See also Wright v. Enomoto*, 462 F.Supp. 397, 403 (N.D.Cal.), *judgement aff'd*, 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978).

■ Appellees argue that Battle did not intend to testify at the hearing, and that therefore his removal from the hearing failed to prejudice his case. We do not believe that an inmate's right to attend his own disciplinary hearing depends upon the role he is to play in that hearing. Due process ensures fundamental fairness and protects against arbitrary governmental action. *Wolff*, 418 U.S. at 564, 94 S.Ct. at 2978. An inmate's mere presence at his disciplinary hearing, regardless of his role, serves both these goals, allowing the inmate to witness the proceedings against him and providing a check on the authority of the disciplinary body. Therefore, we hold that an inmate's right to attend a prison disciplinary hearing is one of the essential due process protections afforded by the Fourteenth Amendment and recognized in *Wolff.*

Notwithstanding the fact that an inmate has a due process right to be present at his own prison disciplinary hearing, the Supreme Court has made clear that the rights accorded inmates at disciplinary hearings are not absolute, and are limited by "the competing concerns of maintaining institutional safety and other correctional goals." *Smith v. Massachusetts Dept. of Corrections*, 936 F.2d 1390, 1399 (1st Cir.1991). The Supreme Court has held that due process is met "so long as the reasons [for depriving an inmate of his rights] are logically related to 'institutional safety or correctional goals'...." *Ponte v. Real*, 471 U.S. 491, 497, 105 S.Ct. 2192, 2196, 85 L.Ed.2d 553 (1985). Thus, the question in this case becomes whether the hearing panel's exclusion of Battle from his disciplinary proceeding on the grounds that he was uncooperative logically relates to "institutional safety or correctional goals."

In answering this question we must bear in mind that "[p]rison administrators

should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). At the same time, the Supreme Court's decision in *Ponte, supra*, "clarifies that the burden of persuasion as to the existence and sufficiency of such institutional concerns ... is borne by the prison officials, not by the prisoners." *Grandison v. Cuyler*, 774 F.2d 598, 604 (3d Cir.1985).

Although this is a close case, we hold that the panel's removal of Battle from the hearing was logically related to correctional goals, and that, therefore, the panel's action did not constitute a violation of Battle's due process rights. The Supreme Court has specifically identified "internal order" and "discipline" as correctional goals that need to be balanced against the due process rights of inmates. *Bell v. Wolfish, supra.* The hearing panel excluded Battle from his hearing on the grounds that he refused to answer the panel's questions, thereby impeding the course of the disciplinary hearing. That Battle was in fact uncooperative is indisputable, as is the fact that the proceedings were delayed by virtue of his recalcitrance. That such recalcitrance threatened the basic correctional goal of institutional order and undermined the authority of the hearing panel is also indisputable. As noted by the Supreme Court in *Ponte:*

> prison disciplinary hearings take place in tightly controlled environments peopled by those who have been unable to conduct themselves properly in a free society. Many of these persons have scant regard for property, life, *or rules of order. ...*

*Ponte*, 471 U.S. at 497, 105 S.Ct. at 2191 (emphasis added). Battle's obstructionism undermined the discipline and order that is necessary in the prison environment in general, and in disciplinary proceedings in particular. Thus, the hearing panel's decision to exclude him from the hearing on the basis of his refusal to answer its questions

was logically related to valid correctional goals.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of the appellees.