NUMBER 13-01-148-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


TINAKA C. BELL, Appellant,


v.


TEXAS DEPARTMENT OF CRIMINAL JUSTICE INSTITUTIONAL DIVISION ET AL., Appellees.

___________________________________________________________________


On appeal from the 156th District Court of Bee County, Texas.

__________________________________________________________________


O P I N I O N


Before Chief Justice Valdez and Justices Yañez and Castillo

Opinion by Justice Yañez


Tinaka Charles Bell appeals from the trial court's judgment affirming the administrative action taken against him by the
appellee, the Texas Department of Criminal Justice-Institutional Division (TDCJ-ID). We affirm.

By six points of error, appellant argues: (1) there was insufficient evidence to support the TDCJ-ID administrative ruling
and the trial court's subsequent affirmance of that ruling; (2) the TDCJ-ID deprived appellant of his right to due process by
not allowing him to attend the disciplinary hearing and by denying his witnesses the opportunity to testify at the hearing;
and (3) records falsified by the TDCJ-ID were wrongly admitted against appellant at his disciplinary hearing.

Background

At approximately 4:00 p.m., December 20, 1999, an inmate riot broke out in the administrative segregation area of the
McConnell Unit of the TDCJ-ID in Beeville. In a hearing on January 11, 2000, appellant was found to have participated in
the riot. He was fined $534.97 for damaging state property during the riot, and a charge in that amount was assessed
against his inmate trust account. After he exhausted his administrative remedies through the TDCJ-ID grievance system,
appellant filed suit in the District Court of Bee County against TDCJ-ID. Following a pre-trial hearing and review of the
administrative record, the trial court signed a final judgment on December 22, 2000, affirming appellant's disciplinary
conviction and fine. This appeal ensued.

Applicable Law

A TDCJ-ID inmate is liable for his intentional damage to state property. Tex. Gov't Code Ann. §500.02(a) (Vernon 1998). 
If more than one inmate is involved in the property damage, each inmate is jointly and severally liable for the damage. Id. 
The state's claims for property damages shall be adjudicated through an administrative procedure. Tex. Gov't Code Ann.
§500.02(b) (Vernon 1998). Damages may only be assessed after a hearing and may not exceed the value of the property
damaged. Id. An inmate's trust account may be seized to satisfy the inmate's liability for property damage. Tex. Gov't
Code Ann. §500.002(c) (Vernon 1998).

After exhausting all administrative remedies, an inmate may petition a district court for judicial review of the adjudication
of liability for property damage. Tex. Gov't Code Ann. §500.002(e) (Vernon 1998). Upon judicial review, the district
court shall follow the rules governing judicial review of contested cases provided in chapter 2001 of the Texas Government
Code. Tex. Gov't Code Ann. §500.002(d) (Vernon 1998); Tex. Gov't Code Ann.§ 2001.171 (Vernon 2000).

Standard of Review

When reviewing a case under the premise of a substantial evidence question, a court may not substitute its judgment for the
judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:

(1) may affirm the agency decision in whole or in part; and

(2) shall reverse and remand the case for further proceeding if substantial rights of the appellant have been prejudiced
because the administrative findings, inferences, conclusions, or decisions are:

(A) in violation of a constitutional or statutory provision;

(B) in excess of the agency's statutory authority;

(C) made through unlawful procedure;

(D) affected by other error of law;

(E) not reasonably supported by substantial evidence considering the reliable and probative exercise of discretion;

(F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code Ann. §2001.174 (Vernon 2000). Section 500.002 does not specify the scope of judicial review. Tex.
Gov't Code Ann. §500.002(a) (Vernon 1998). Therefore, the "substantial evidence" standard specified in section 2001.174
applies in this case. Tex. Gov't Code Ann.§ 2001.174 (Vernon 2000).

Substantial evidence review is a limited standard of review, requiring "only more than a mere scintilla" to support an
agency's determination. Montgomery Indep. Sch. Dist. v. Davis, 34 S.W.3d 559, 566 (Tex. 2000); R.R. Comm'n v. Torch
Operating Co., 912 S.W.2d 790, 792-93 (Tex. 1995). The determination of whether an agency's determination meets that
standard is one of law. Fireman's & Policemen's Civil Serv. Comm'n v. Brinkmeyer, 662 S.W.2d 953, 956 (Tex. 1984); Bd.
of Firemen's Relief & Ret. Fund Trs. v. Marks, 150 Tex. 433, 242 S.W.2d 181, 183 (Tex. 1951). A court applying the
substantial evidence standard of review may not substitute its judgment for that of the agency on the weight of the
evidence. Tex. Gov't Code Ann. § 2001.174 (Vernon 2000); Tex. Health Facilities Comm'n v. Charter Medical-Dallas,
Inc., 665 S.W.2d 446, 452 (Tex. 1984). The issue for the reviewing court is not whether the agency's decision was correct,
but only whether the record demonstrates some reasonable basis for the agency's action. City of El Paso v. Pub. Util.
Comm'n, 883 S.W.2d 179, 185 (Tex. 1994). In fact, an administrative decision may be sustained even if the evidence
preponderates against it. Torch Operating, 912 S.W.2d at 793.

Application

A. Is the Evidence Sufficient to Uphold the Administrative Ruling?

By his first point of error, appellant argues that the TDCJ-ID disciplinary action assessing a property damage charge against
his inmate trust account was made without substantial supporting evidence. 

We must determine whether the record demonstrates some reasonable basis for the TDCJ-ID decision. See City of El Paso,
883 S.W.2d at 185. There exists in the record documentation that the charging officer saw appellant actively participating
in the riot and destroying state property and the officer testified accordingly at the hearing. The officer in question stated
that he was on the roof and saw appellant striking a broom handle against a window. The officer also stated that he
recognized appellant because he had brought appellant to segregation earlier. We hold this evidence to be "more than a
scintilla,"Davis, 34 S.W.3d at 566, and find that there is substantial evidence supporting the disciplinary action. Appellant's
first point of error is overruled. 

B. Was Appellant Deprived of His Right to Due Process?

By his second, third, and sixth points of error, appellant contends he was denied his due process rights under the Fourteenth
Amendment of the United States Constitution. First, he argues that he was wrongly excluded from the January 11, 2000,
disciplinary hearing. Second, he alleges that he was not allowed to introduce witnesses on his own behalf. We construe
these points of error as issues of procedural due process. 

The Fourteenth Amendment of the United States Constitution protects against deprivation of life, liberty, or property by the
state "without due process of law." Parrat v. Taylor, 451 U.S. 527, 537 (1981). The opportunity to be heard is the
fundamental requirement of due process; it is an opportunity which must be granted at a meaningful time and in a
meaningful manner. Id. at 540; Armstrong v. Manzo, 380 U.S. 545, 552 (1965). The Due Process Clause promotes
fairness by requiring the government to follow appropriate procedures when its agents decide to deprive a person of life,
liberty, or property. Daniels v. Williams, 474 U.S. 327, 332 (1986).

We examine procedural due process issues in two steps: first, we ask whether an existing liberty or property interest has
been interfered with; and secondly, we determine whether the procedures attendant upon that interference were
constitutionally sufficient. Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 462 (1989). A prison inmate has a
property interest in his inmate trust account. Brewer v. Collins, 857 S.W.2d 819, 823 (Tex. App.-Houston [1st Dist.] 1993,
no writ). At a minimum, state law requires procedures that ensure that an inmate's property right is not arbitrarily
abrogated. Brewer, 857 S.W.2d at 823 (citing Ex parte Henderson, 645 S.W.2d 469, 472 (Tex. Crim. App.
1983)(revocation of good-time credit)). Appellant has clearly satisfied the first requirement.

Next, we must determine whether the TDCJ-ID's disciplinary procedures were constitutionally sound. Generally, to satisfy
the requirements of due process, a prison disciplinary action must meet the following minimum procedural requirements:
(1) the inmate must be given advance written notice of the charges against him; (2) any evidence against an inmate must be
disclosed to him; (3) there must be a written statement by the factfinders as to the evidence relied on and the reasons for the
disciplinary action; (4) the inmate should be afforded the opportunity to be heard in person and to present witnesses and
documentary evidence in his own defense as long as doing so will not jeopardize institutional safety or correctional goals;
and (5) the inmate should be given the right to confront and cross-examine adverse witnesses, unless the hearing officer
specifically finds good cause for not allowing confrontation. Wolff v. McDonnell, 418 U.S. 539, 559 (1974); Morrisey v.
Brewer, 408 U.S. 471, 489 (1972). Appellant claims that he was deprived of the third, fourth, and fifth requirements.

The United States Supreme Court has held, in the context of a review of a disciplinary action in which an inmate was
placed in administrative segregation, that:

in determining what is "due process" in the prison context, we are reminded that one cannot automatically apply procedural
rules designed for free citizens in an open society . . . to the very different situation presented by a disciplinary proceeding
in a state prison. Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of
policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain
institutional security. These considerations convince us that petitioners were obligated to engage only in an informal,
nonadversary review of the information supporting respondents' administrative confinement, including whatever statement
respondent wished to submit, within a reasonable time after confining him to administrative segregation.

Hewitt v. Helms, 459 U.S. 460, 472-73 (1983) (citations omitted); see also Wolff, 418 U.S. at 556. The courts should defer
to prison administrators' adoption and implementation of policies needed to ensure order and security. Pell v. Procunier,
417 U.S. 817, 827 (1974). The rights of an inmate become subject to restrictions imposed by the nature of the regime to
which the inmate has become lawfully committed. Wolff, 418 U.S. at 555. In a prison disciplinary hearing, an inmate is not
afforded the full range of rights or the full extent of rights that are given to a free man. Id. There must be a mutual
accommodation between institutional needs and objectives and the provisions of the Constitution. Id. at 556. 

The right to attend a disciplinary hearing is an essential due process protection, but it is not absolute, nor is the right
guaranteed. Battle v. Barton, 970 F.2d 779, 782 (11th Cir. 1992)(per curiam); see also Moody v. Miller, 864 F. 2d 1178,
1181 (5th Cir. 1989)(if a prisoner is unable to attend a disciplinary hearing, due process requires nothing more than that the
hearing be held in accordance with all of the other requirements of due process that are called for under the circumstances).

The Disciplinary Report and Hearing Record states that there was a "threat posed to staff by offender's actions at (the) time
of (the) hearing" and that there was a "security threat in the living area." Because of these conditions, appellant was not
allowed to attend the hearing. Although appellant, himself, was not present at the hearing, an attorney was there to
represent his interests, to cross-examine those witnesses adverse to the appellant's interest, and to present evidence on
appellant's behalf. The record shows that TDCJ-ID believed a threat would be posed from a confrontation with appellant. 
We hold that appellant had no absolute due process right to attend the disciplinary hearing. We must, therefore, defer to
TDCJ-ID's determination that there was a security risk to officers and inmates in attempting to escort appellant to the
hearing that morning. 

Appellant also claims that he was deprived of the opportunity to present witnesses in his defense. As mentioned above, the
Fourteenth Amendment affords a defendant the right to present witnesses in his favor; however we have noted that these
rights are limited in the case of prison inmates, where matters of safety and security must be considered by prison
administrators. The witnesses that appellant sought to present at the hearing were also inmates, who corroborated his
statement that he was not involved in the riot. Although these witnesses did not give live testimony at the disciplinary
hearing, their statements, denying appellant's participation in the riot, were submitted by appellant's counsel for the court's
consideration. Appellant's due process rights were not violated in this case.

We overrule appellant's second, third, and sixth points of error.

C. Was the record falsified?

By his fourth and fifth points of error, appellant contends that both the Disciplinary Hearing Records and the Inmate Initial
Offense Report, along with the Preliminary Investigation Report and Worksheet, were falsified. Appellant offers no
evidence to support these allegations. This Court has carefully reviewed the record, including the audio tape recording of
the administrative hearing, and we find no indication that the records were falsified. We overrule appellant's fourth and
fifth points of error.

The judgment of the trial court is AFFIRMED.





 

LINDA REYNA YAÑEZ

Justice









Do not publish. Tex. R. App. P. 47.3.



Opinion delivered and filed this the

31st day of August, 2001.