**Ex parte Pete Joe LOZANO.**

No. 04–98–00260–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 14, 1998.

John W. Bull, Pearsall, for Appellant.

George Poe Morrill, Dist. Atty., Herb Hancock, Asst. Dist. Atty., Beeville, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and ANGELINI, JJ.

## OPINION

ANGELINI, Justice.

Pete Joe Lozano appeals from the denial of the relief requested in his pre-trial application for writ of habeas corpus. In one point of error, Lozano contends that the trial court erred in denying the requested relief because his prosecution is barred by his constitutional right to be protected from double jeopardy. We affirm the order of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

Lozano is an inmate at the Texas Department of Criminal Justice—Institutional Division. He has been charged by indictment with the offense of riot pursuant to section 42.02 of the Texas Penal Code. The indictment alleges that Lozano participated in a prison riot on March 6, 1995. Prior to trial, Lozano filed an application for writ of habeas corpus alleging that the State is barred from pursuing the criminal charges against him based on the double jeopardy protections of the Fifth and Fourteenth Amendments of the United States Constitution. Specifically, Lozano alleged that, because the State assessed and collected $138.00 from his inmate trust account as restitution for the damage he caused to state property during the riot, he may not again be punished for the same actions.

The trial court issued the writ and conducted an evidentiary hearing, during which the State stipulated that $138.00 was taken from Lozano's inmate trust account as compensation for damaged state property pursuant to section 500.002 of the Texas Government Code. Following the hearing, the trial court denied relief.

### ARGUMENT AND AUTHORITY

■ The double jeopardy clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense. *United States v. Halper*, 490 U.S. 435, 440, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989). This case involves the third of these protections. Lozano contends that the Double Jeopardy Clause bars the State from prosecuting him for the criminal offense of riot because he has already been punished for that offense by the appropriation of funds from his inmate trust account. The question we must determine, then, is whether the appropriation of Lozano's funds was so punitive in nature that it constituted "punishment" for the purpose of double jeopardy analysis. *Id.* at 442, 109 S.Ct. 1892.

The State appropriated Lozano's funds by the authority of the Texas Government Code which provides that an inmate is liable for damage to state property intentionally caused by the inmate. TEX. GOVT.CODE ANN. § 500.002(a) (Vernon Pamph.1998). The code authorizes the Department of Criminal Justice to seize the contents of the inmate's trust fund if it is determined that the inmate is liable for property damage. TEX. GOVT. CODE ANN. § 500.002(c) (Vernon Pamph. 1998). However, the damages awarded to the department may not exceed the value of the property damaged. TEX. GOVT.CODE ANN. § 500.002(b) (Vernon Pamph.1998).

In support of his position that a section 500.002 appropriation of funds constitutes punishment for purposes of double jeopardy, Lozano cites the Supreme Court's decision in *Dept. of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In *Kurth Ranch*, the Kurth family was arrested for the possession of large quantities of marijuana. After the Kurths were convicted and sentenced, Montana attempted to collect a state tax imposed for the possession and storage of dangerous drugs. After careful examination of the purpose and characteristics of the tax, the Supreme Court concluded that the tax constituted a second punishment under the Double Jeopardy Clause, stating that the tax was "a concoction of anomalies, too far removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." *Id.* at 783, 114 S.Ct. 1937. As Lozano points out, the Texas Court of Criminal Appeals has followed *Kurth Ranch* in holding that the Texas drug tax was created

with penal intent and, therefore, constitutes punishment for purposes of double jeopardy. *Stennett v. State,* 941 S.W.2d 914, 917 (Tex. Crim.App.1996); *see Ex parte Chappell,* 959 S.W.2d 627 (Tex.Crim.App.1998); *Ex parte Diaz,* 959 S.W.2d 213 (Tex.Crim.App.1998).

Relying on *Kurth Ranch, Chappell,* and *Diaz,* Lozano contends that the appropriation of funds from his inmate trust account constitutes "restitution" for the crime of riot and, therefore, so demonstrates penal characteristics that it is subject to the Double Jeopardy Clause. Lozano's case, however, is too factually distinguishable from the tax cases he cites to be controlled by them. The purposes behind tax statutes and a statute controlling compensation for destruction of state property by an inmate are entirely distinct.

There are Texas and federal cases holding that disciplinary sanctions imposed by prison officials for crimes committed in prison do not bar subsequent criminal prosecution for those crimes. *See Hernandez v. State,* 904 S.W.2d 808, 810 (Tex.App.—San Antonio 1995)(citing cases), *aff'd, Ex parte Hernandez,* 953 S.W.2d 275, 285 (Tex.Crim.App.1997)(citing cases). However, while these cases are persuasive, they deal with very different civil penalties than the one before us, such as loss of "good time" and restriction of privileges. *See id.* Accordingly, as in most double jeopardy cases, an independent analysis of the civil penalty at issue in this case is warranted.

■ Under a *Kurth Ranch* double jeopardy analysis, courts examine both the characteristics of the penalty and the intent behind its creation. *Kurth Ranch,* 511 U.S. at 784, 114 S.Ct. 1937. Then, under *Halper,* even if the intent is determined to be remedial and not punitive, double jeopardy is implicated if the penalty is so extreme that it constitutes punishment. *Halper,* 490 U.S. at 442, 109 S.Ct. 1892. In the instant case, an examination of the character and purpose of section 500.002 of the Texas Government Code reveals its remedial nature. Section 500.002 operates solely to make an inmate responsible for the loss incurred as a result of the inmate's intentional destruction of state property. In other words, the purpose of the section is to compensate the state for its loss,

not to punish the inmate for his actions. Further, the statute itself limits the amount of damages that may be assessed to the value of the property destroyed, thus protecting the statute's non-punitive characteristics.

■ A civil penalty is considered remedial if its purpose is merely to reimburse the government for damages sustained as a result of the defendant's criminal conduct. *Kurth Ranch,* 511 U.S. at 777, 114 S.Ct. 1937 (citing *Halper,* 490 U.S. at 449–50, 109 S.Ct. 1892). Such is the case here. The civil penalty assessed via section 500.002 is so proportionate to the state's damages that it can not be characterized as punishment. Of course, the effect of the seizure of $138.00 from Lozano's inmate trust account must feel punitive to Lozano for "even remedial sanctions carry the sting of punishment." *Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. 1892. However, for double jeopardy purposes, the seizure was clearly remedial. Accordingly, the State is not constitutionally barred from pursuing criminal charges against Lozano for his alleged participation in the prison riot. The trial court's order denying the relief requested in Lozano's application for writ of habeas corpus is affirmed.