**Jesse COVARRUBIAS, Appellant,**

**v.**

**TEXAS DEPARTMENT OF CRIMINAL JUSTICE—INSTITUTIONAL DIVISION, Appellee.**

**No. 13–00–779–CV.**

Court of Appeals of Texas, Corpus Christi.

June 28, 2001.

Jesse Covarrubias, Livingston, pro se.

John Cornyn, Atty. Gen. of Texas, W. Lance Cawthon, Atty. Gens. Office, Austin, for appellee.

Before DORSEY, HINOJOSA, and RODRIGUEZ, JJ.

## OPINION

HINOJOSA, Justice.

Appellant Jesse Covarrubias, appeals from the trial court's judgment affirming an administrative action against him by appellee, Texas Department of Criminal Justice Institutional Division ("TDCJ–ID"). By eight points of error, appellant contends: (1) there is no substantial evidence to support the TDCJ–ID decision, or the trial court's affirmance of that decision, (2) the TDCJ–ID was wrong in not allowing him to attend the disciplinary hearing, (3) false testimony was wrongly admitted against him at the disciplinary hearing, and (4) the trial court erred in not notifying appellant of its ruling on certain motions filed by appellant. We affirm.

### A. BACKGROUND

It is undisputed that a riot occurred at approximately 4:00 p.m. on December 20, 1999, in the administrative segregation area of the McConnell Unit of the TDCJ–ID in Beeville. On January 13, 2000, appellant was found to have participated in the riot. He was fined $534.97 for property damage sustained in the riot, and a charge in that amount was assessed against his inmate trust account. After he exhausted his administrative remedies through the TDCJ–ID grievance system, appellant filed suit in the District Court of Bee County against TDCJ–ID and its director, Gary Johnson. Johnson's plea to the jurisdiction was granted, and he was dismissed from the case. Following a pretrial hearing and review of the administrative record, the trial court signed a final judgment on December 4, 2000, affirming appellant's disciplinary conviction and fine. This appeal ensued.

### B. APPLICABLE LAW

A TDCJ–ID inmate is liable for his intentional damage to state property. Tex. Gov't Code Ann. § 500.002(a) (Vernon 1998). If more than one inmate is involved in the property damage, each inmate is jointly and severally liable for the damage. Tex. Gov't Code Ann. § 500.002(a) (Vernon 1998). The state's claims for property damages shall be adjudicated through an administrative procedure. Tex. Gov't Code Ann. § 500.002(b) (Vernon 1998). Damages may be assessed only after a hearing and may not exceed the value of the property damaged. Tex. Gov't Code Ann.

§ 500.002(b) (Vernon 1998).[1] An inmate's trust account may be seized to satisfy the inmate's liability for property damage. TEX. GOV'T CODE ANN. § 500.002(c) (Vernon 1998).

After exhausting all administrative remedies, an inmate may petition a district court for judicial review of the adjudication of liability for property damage. TEX. GOV'T CODE ANN. § 500.002(d) (Vernon 1998). The inmate must file such a petition within thirty days after exhausting all administrative remedies. TEX. GOV'T CODE ANN. § 500.002(e) (Vernon 1998). Upon judicial review, the district court shall follow the rules governing judicial review of contested cases provided in chapter 2001 of the Texas Government Code. TEX. GOV'T CODE ANN. § 500.002(d) (Vernon 1998); TEX. GOV'T CODE ANN. § 2001.171 (Vernon 2000).

### D. STANDARD OF REVIEW

If the law authorizes review of a decision in a contested case under the substantial evidence rule or if the law does not define the scope of judicial review, a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:

(1) may affirm the agency decision in whole or in part; and

(2) shall reverse and remand the case for further proceeding if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(a) in violation of a constitutional or statutory provision;

(b) in excess of the agency's statutory authority;

(c) made through unlawful procedure;

(d) affected by other error of law;

(e) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T CODE ANN. § 2001.174 (Vernon 2000). Section 500.002 does not specify the scope of judicial review. TEX. GOV'T CODE ANN. § 500.002(a) (Vernon 1998). Therefore, the "substantial evidence" standard specified in Section 2001.174 applies in this case. TEX. GOV'T CODE ANN. § 2001.174 (Vernon 2000).

 Substantial evidence review is a limited standard of review, requiring "only more than a mere scintilla" to support an agency's determination. *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 566 (Tex.2000); *R.R. Comm'n v. Torch Operating Co.*, 912 S.W.2d 790, 792–93 (Tex.1995). The determination of whether an agency's determination meets that standard is one of law. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex.1984); *Bd. of Firemen's Relief & Ret. Fund Trs. v. Marks*, 150 Tex. 433, 242 S.W.2d 181, 183 (Tex.1951). A court applying the substantial evidence standard of review may not substitute its judgment for that of the agency. TEX. GOV'T CODE ANN. § 2001.174

---

1. A civil penalty assessed and collected from an inmate's trust account as restitution for property damage he caused to state property during a prison riot is not punishment under the Double Jeopardy Clause, and will not bar the inmate's subsequent prosecution for participation in the riot. *Ex parte Lozano*, 982 S.W.2d 511, 513 (Tex.App.—San Antonio 1998, no pet.). The purpose of the statute is to compensate the state for its loss rather than to punish the inmate, and the statute limits the amount of damages to the value of the property destroyed. *Id.*

(Vernon 2000); *Tex. Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 452 (Tex.1984). The issue for the reviewing court is not whether the agency's decision was correct, but only whether the record demonstrates some reasonable basis for the agency's action. *City of El Paso v. Pub. Util. Comm'n*, 883 S.W.2d 179, 185 (Tex.1994). In fact, an administrative decision may be sustained even if the evidence preponderates against it. *Torch Operating*, 912 S.W.2d at 793.

### E. Record of Disciplinary Hearing

The disciplinary hearing was held on January 13, 2000, at 6:05 a.m.[2] The "Hearing Work Sheet" reveals that appellant was excluded from the disciplinary hearing "due to security risk to staff and other offenders. All pod became threatening to escort officers for hearing." The "Disciplinary Report and Hearing Record" states that appellant had asked to be present, but was not present "due to offender being disruptive prior to be [sic] brought ... caused possible use of force. Offender became a threat to escort officers. Gas was administered to E pod prior to hearing—no inmate being escorted."

Appellant's counsel objected to appellant's absence, and entered a plea of not guilty on his behalf. The Hearing Work Sheet reflects that Sgt. J.A. Hager testified by telephone that appellant "came out of cell—came out of crash gate—came into picket & stabbed ofr. in control picket." According to the Disciplinary Report and Hearing Record, the evidence presented and reason for determination of guilt was "officer report & testimony." The "specific factual reason" for the punishment imposed is that "offender caused extensive

damage to state property." The Disciplinary Report and Hearing Record lists the "offense description" as follows:

On the date and time listed above, and at ML Unit, 12 Bldg., E–Pod, offender Covarrubias, Jesse, TDCJ–ID No. 00779137, intentionally participated with William, Kelly, TDCJ–ID No. 00457596, and Gary Bell, TDCJ–ID No. 00772080, in [illegible] their cells and destroying doors and windows, and created a danger of [illegible] property and substantially obstructed the performance of unit operations [illegible] stopping the security of the institutional lock down of the unit. Offender Covarrubias did intentionally destroy cell door and windows by breaking property belonging to the state.

The details of appellant's participation in the riot and property damage set out in the "Offense Report," signed by Officer James Hager, are virtually identical to those in the Disciplinary Report and Hearing Record. The "Preliminary Investigation Report" says that the charging officer did not list other witnesses to the incident, or include documentary evidence, such as photographs. According to the report, the accusing officer said the "offender exited his cell and participated in the riot and destroyed state property." The reports also state that appellant said he did nothing. The "Destruction of State Property Assessment Report" lists charges for security glass, electrical, doors, "picket cabs. & console repair" and cosmetic repair totaling $534.97.

### F. Record of Court Hearing

The reporter's record of the hearing on appellant's petition for judicial review, held

---

2. We note that according to the "Disciplinary Report and Hearing Record," the disciplinary hearing was video recorded on "Tape# 1083 Side# B Start# 343 End# 391." The reporter's record reflects that the trial judge reviewed this videotape. It is not, however, in the record before us.

on September 20, 2000, shows the trial court told appellant he could supplement the court's record by filing new evidence, together with a motion asserting that the new evidence was:

> The Court: what we call "material," in other words, really important and there is a good reason that y'all didn't bring it up at the original hearing—are you aware of any additional information that you're asking to have included in the record that I don't have in front of me now?
>
> Appellant: ... [M]y counsel substitute, the one that represented me, she investigated ... and she said at that time of the incident ... at four o7Dclock in the morning [Sgt. Hager] was at the Garza Unit, and he was called for reinforcement. And he didn't get there until like five or six. So he wrote the case at four o'clock, four p.m., so he don't know if I did what I'm being accused of, because he wasn't there at four o'clock when it all happened....

> \* \* \* \* \*
> \*\* \* \* \* \*

> The Court: Is that anything that's been brought up?
>
> Appellant: I wasn't allowed to go to the hearing because they had a use of force. You see, I was talking with the psychiatrist that day they call me to the hearing, and what happened they had a use of force on my section and said, "Go back to the cell." And then two days later they ran a hearing at six o'clock in the morning when I'm asleep. They have a use of force. I live in B section, and they had a use of force in E section, and they didn't call me they said because I was cussing at officers and all that. I wasn't doing nothing, I was asleep at six o'clock. But I got a sheet there that say on the

11th, January 11th, they changed the date on that notification sheet that I wasn't allowed to go to the hearing, and then the hearing was granted on the 13th....

> \* \* \* \* \*
> \*\* \* \* \* \*

> The Court: ... so what you're asking is that a statement from [the counsel substitute] be allowed to be created and then that that be substituted or made part of the record?
>
> Appellant: Well, yes, sir.

> \* \* \* \* \*
> \*\* \* \* \* \*

> The Court: Here is the way we're going to do it: I'm going to give you 30 days from today, visit with [the counsel substitute] and get whatever document it is that you can get from her ... that indicated what—and then what I want you to do is prepare what's called "a motion," and I've looked through the file, you know how to file a motion.... And then I'll make a decision whether or not to include it in my decision, and then I'll go sit down, and I'll read all of those reports. And if I've allowed that document to be added, I'll read that document. If I don't allow it to be added, it will still be in the file, but I won't be able to consider it. Then I'll listen to the videotape and I'll render a decision in this case probably in the month of December.

On October 16, 2000, Appellant filed a "Motion for New Evidence" in which he stated that he had attempted to get a formal statement from his counsel substitute regarding where Sgt. Hager was at 4:00 p.m. on the day of the riot, but she had not provided one. He attached as an exhibit a copy of the "I–60", or "Inmate Request to Official," he sent to her inquir-

ing about where Sgt. Hager worked. The counsel substitute's response is handwritten on the bottom of the I–60:

> I/M Covarrubias a response was sent to you several months ago telling you what unit Ofc Hager worked at. At time of the incident Ofc Hager worked at the Garza Unit.

Appellant also filed a "Motion for Discovery, Production and Inspection of Evidence," a "Motion to Subpoena Video Tape for Discovery and Inspection of Evidence," a "Motion for Subpoena Counsel Substitute," and a "Motion Requesting Court to Waive Collection." None of these motions was explicitly ruled upon.

On December 11, 2000, the trial court signed a final judgment affirming the assessment of $534.97 in property damages against appellant, finding the assessment was "reasonably supported by substantial evidence."

### G. WAS APPELLANT WRONGLY EXCLUDED FROM THE DISCIPLINARY HEARING?

By his second, third, sixth, and seventh points of error, appellant contends he was wrongly excluded from the January 13, 2000 disciplinary hearing because the security incident occurred in E–Pod, not in appellant's pod; as a result of his exclusion, appellant missed the chance (1) to advise his counsel substitute to ask certain questions to the charging officer and (2) to request a videotape "of appellant being escorted out of his cell by officer's [sic] This tape will show his cell # 63 E–Pod wasn't broken." Although not specifically briefed as such, we construe these points of error as issues of procedural due process.

The record before us provides evidence that a dangerous condition existed at the prison on the morning of January 13, 2000. The Disciplinary Report and Hearing Record states that "gas was administered to E Pod prior to hearing," and further notes that no inmates were being escorted due to a security risk to the escorting officers. The Work Sheet states that there was a "security risk to staff and other offenders."

■ The Fourteenth Amendment of the United States Constitution protects against deprivation of life, liberty, or property by the state "without due process of law." *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The opportunity to be heard is the fundamental requirement of due process; it is an opportunity which must be granted at a meaningful time and in a meaningful manner. *Id.* at 540, 101 S.Ct. 1908; *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). The Due Process Clause promotes fairness by requiring the government to follow appropriate procedures when its agents decide to deprive a person of life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662 (1986).

■ We examine procedural due process issues in two steps: first, we ask whether an existing liberty or property interest has been interfered with, and secondly, we determine whether the procedures attendant upon that interference were constitutionally sufficient. *Kentucky Dep't. of Corrections v. Thompson*, 490 U.S. 454, 462, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). A prison inmate has a property interest in his inmate trust account. *Brewer v. Collins*, 857 S.W.2d 819, 823 (Tex.App.—Houston [1st Dist.] 1993, no pet.). At minimum, state law requires procedures that ensure that an inmate's property right is not arbitrarily abrogated. *Brewer*, 857 S.W.2d at 823 (citing *Ex parte Henderson*, 645 S.W.2d 469, 472 (Tex. Crim.App.1983) (revocation of good-time credit)). Appellant has clearly satisfied the first requirement.

 We must next determine whether the disciplinary procedures in question here were constitutionally sound. Generally, to satisfy the requirements of due process, a prison disciplinary action must meet certain minimum procedural requirements: (1) written notice of the claimed violation; (2) disclosure to the inmate of evidence against him; (3) an opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine adverse witnesses, unless the hearing officer specifically finds good cause for not allowing such confrontation; (5) a neutral and detached hearing body; and (6) a written statement by the fact finders regarding the evidence relied on and reasons for the disciplinary action. *Wolff v. McDonnell,* 418 U.S. 539, 559, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Morrissey v. Brewer,* 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (in the context of parole revocation). Appellant complains that he was denied the third and fourth elements.

 We note, however, that the United States Supreme Court has held, in the context of a review of a disciplinary action in which an inmate was placed in administrative segregation, that:

> [i]n determining what is "due process" in the prison context, we are reminded that [o]ne cannot automatically apply procedural rules designed for free citizens in an open society ... to the very different situation presented by a disciplinary proceeding in a state prison. Prison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. These considerations convince us that petitioners were obligated to engage only in an informal, nonadversary review of the information supporting respondents' administrative confinement, including whatever statement respondent wished to submit, within a reasonable time after confining him to administrative segregation.

*Hewitt v. Helms,* 459 U.S. 460, 472–73, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (citations omitted); *see also Wolff,* 418 U.S. at 556, 94 S.Ct. 2963. The courts should defer to prison administrators' adoption and implementation of policies needed to ensure order and security. *Pell v. Procunier,* 417 U.S. 817, 827, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *accord Block v. Rutherford,* 468 U.S. 576, 584–84, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984); *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 126, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977). The right to attend a disciplinary hearing is an essential due process protection, but is not absolute, *Battle v. Barton,* 970 F.2d 779, 782 (11th Cir.1992) (per curiam), or guaranteed:

> If a prisoner is unable to or refuses to attend a disciplinary hearing, due process requires not more than that the hearing be held in accordance with all of the other requirements of due process that are called for under the circumstances. Due process requires only that the government operate under procedures that give a person a fair *opportunity* to ensure that the governmental decision affecting that person's life, liberty or property is just; it does not mean that the government, in an effort to make sure that everyone does what is in his or her best interest, must see to it that each person takes advantage of these opportunities.

*Moody v. Miller,* 864 F.2d 1178, 1181 (5th.Cir.1989) (emphasis in original).

We hold that appellant had no absolute due process right to attend the disciplinary

hearing. We must, therefore, defer to TDCJ–ID's determination that there was a security risk to officers and inmates in attempting to escort appellant to the hearing that morning. Appellant's second, third, sixth and seventh points of error are overruled.

### H. WAS FALSE TESTIMONY WRONGLY ADMITTED AT THE HEARING?

By his fourth point of error, appellant complains that false testimony was adduced against him at the disciplinary hearing. By his fifth point of error, appellant contends TDCJ–ID acted maliciously against him by knowingly allowing the false testimony.

The crux of appellant's complaint is that the charging officer, Sgt. Hager, could not have observed appellant inflicting the property damage in question because Hager worked at the Garza Unit, and was called to the McConnell Unit as a reinforcement.

The record states that appellant was engaged in rioting and destroying state property at approximately 4:00 p.m. on December 20, 1999. According to the record, Hager testified via telephone at the hearing that he saw appellant participate in the riot and cause the property damage. The only evidence in the record that conceivably supports appellant's allegation that Hager was not present at that time and could not have seen appellant destroying property, is a brief, handwritten note to appellant from his counsel substitute that Hager worked at the Garza Unit on the date of the riot. Even if we assume the trial judge considered this document, it is not definitive. We have no information about what time the disturbance actually began, when Hager was called to the prison, or when he arrived at the prison. Appellant's fourth and fifth points of error are overruled.

### I. TRIAL COURT'S FAILURE TO NOTIFY APPELLANT OF THE DISPOSITION OF HIS MOTIONS

By his eighth point of error, appellant asserts the trial court erred because it "never let appellant know if [his motions] were accepted or denied." Because appellant has completely failed to brief this point, we hold it is waived. TEX.R.APP. P. 38.1(e). Even if appellant had adequately briefed this point, it would have to be overruled because the trial court's order, which appellant does not contend he did not receive, is clearly intended to dispose of all issues and parties before the court, including all pending motions. *See Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 205 (Tex.2001). Appellant's eighth point of error is overruled.

### J. WAS THE DISCIPLINARY ACTION SUPPORTED BY SUBSTANTIAL EVIDENCE?

By his first point of error, appellant contends the TDCJ–ID disciplinary action assessing a property damage charge against his inmate trust account was made without substantial supporting evidence.

We must determine whether the record demonstrates some reasonable basis for TDCJ–ID's decision. *See City of El Paso*, 883 S.W.2d at 185. As we have noted above in our discussion of the record, there is various documentation that the charging officer saw appellant actively participating in the riot and destroying state property, and that the officer testified accordingly at the hearing. We hold this evidence is "more than a scintilla," *Davis*, 34 S.W.3d at 566, and that there is substantial evidence supporting the disciplinary action. Appellant's first point of error is overruled.

The judgment of the trial court is affirmed.