*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*

★ ★ ★  ★ ★ ★

# OPINION

No. 04-07-00004-CV

Craig Michael **REED**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 00-1456-CR
Honorable Gary L. Steel, Judge Presiding

Opinion by:    Rebecca Simmons, Justice

Sitting:        Karen Angelini, Justice
                Rebecca Simmons, Justice
                Steven C. Hilbig, concurring in the judgment only

Delivered and Filed:   July 9, 2008

REVERSED AND REMANDED

The primary issue in this appeal is whether this court has jurisdiction over an appeal from a trial court's order to the Texas Department of Criminal Justice Institutional Division ("TDCJ") to withdraw funds from Appellant Craig Michael Reed's inmate trust account. Reed complains that the trial court issued the order requiring the TDCJ to withdraw funds from his inmate trust account without authority and without due process of law. We conclude that this court has jurisdiction, reverse the trial court's order and remand for further proceedings.

## BACKGROUND

On September 26, 2005, Reed was sentenced to community supervision for the offense of unauthorized use of a motor vehicle. On November 9, 2005, the trial court entered a judgment revoking Reed's community supervision. A second judgment was entered sentencing Reed to two years confinement in the state jail division of the TDCJ and assessing court costs against Reed in the amount of $640.00.

In order to make purchases from the prison commissary, Reed opened an inmate trust account. These accounts are centrally managed by TDCJ's Commissary and Inmate Trust Fund. The funds are used solely for inmate commissary purchases and are funded by the periodic deposit of money by the inmate's arrangement.[1]

Pursuant to Section 501.014(e) of the Texas Government Code,[2] on October 23, 2006, the trial court issued an order to the TDCJ to withdraw money from Reed's inmate trust account and

---

[1] For further discussion of inmate accounts *see* http://www.tdcj.state.tx.us/finance/comm&trust/comm&trust-home.htm (last visited May 6, 2008); *Hatfield v. Scott*, 306 F.3d 223, 224-25 (5th Cir. 2002).

[2] Section 501.014(e) provides

> [o]n notification by a court, the department shall withdraw from an inmate's account any amount the inmate is ordered to pay by order of the court under this subsection. The department shall make a payment under this subsection as ordered by the court to either the court or the party specified in the court order. The department is not liable for withdrawing or failing to withdraw money or making payments or failing to make payments under this subsection. The department shall make withdrawals and payments from an inmate's account under this subsection according to the following schedule of priorities:
>
> . . . .
>
> (4) as payment in full for all orders for court fees and costs; . . . .

TEX. GOV'T CODE ANN. § 501.014 (Vernon 2004)

forward the funds to the district clerk to pay for the court costs assessed in the underlying judgment of November 9, 2005.  On November 28, 2006, Reed filed a motion and objection requesting the court's order be either withdrawn or stayed.  No action was taken by the trial court.  On appeal, Reed contends that the order was issued without authority and due process of law.

**ANALYSIS**

On March 8, 2007, we ordered the parties to address whether this court has jurisdiction over Reed's appeal in their briefing.  The State contends that an order pursuant to section 501.014(e) is not independently appealable from the underlying judgment.  TEX. GOV'T CODE ANN. § 501.014(e) (Vernon 2004).  Reed, on the other hand, argues that this is a final post-judgment order which is independent from the underlying judgment and is appealable.

**A.      Jurisdiction**

*1.      Civil or Criminal*

There is disagreement among the courts of appeals over whether orders pursuant to section 501.014(e) of the Government Code are appealable.  In *Abdullah v. State*, 211 S.W.3d 938 (Tex. App.—Texarkana 2007, no pet.), Abdullah similarly appealed an order issued pursuant to section 501.014.  In determining that Abdullah had a right to appeal, the appellate court analogized the section 501.014 order to a writ of garnishment order and turnover order and concluded that it was a civil appeal separate and independent of the underlying judgment.  *Id.* at 940-41.  In contrast, in *Gross v. State*, No. 07-06-00489-CR, 2007 WL 2089365, at *1 (Tex. App.—Amarillo July 23, 2007, no pet.), the court of appeals concluded that the section 501.014 order was closely related to the underlying criminal case and as a result, the only appealable order was the judgment that included the assessment of court costs.  Specifically, the Amarillo court noted:

> [u]nlike the situation in *Abdullah*, appellant was assessed court costs and attorney fees at the conclusion of trial. The reimbursement of the expenses incurred by the taxpayers were incorporated into the judgment which was signed by the trial court on October 16, 2003. By virtue of the inclusion of these fees in the judgment, appellant had notice that he would be required to pay court costs and attorney fees. Hence, we conclude that the issue of recoupment of attorney fees is closely related to the criminal case. *See* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (Vernon Supp. 2006); *Curry* [*v. Wilson*], 853 SW.2d 40, 43 (Tex. Crim. App. 1993).

*Id.* The Waco court of appeals agrees with the premise in *Gross*, i.e., that a section 501.014 order is closely connected to the underlying criminal case and is, therefore, not independently appealable. *Zink v. State*, 244 S.W.3d 508, 509 (Tex. App.—Waco 2007, no pet.).

This case is distinguishable from *Gross* in that article 26.05(g) is not implicated here. TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (Vernon Supp. 2007). Article 26.05(g) allows a court to order the defendant to pay for his appointed attorney's fees as court costs upon the court's determination that the defendant has sufficient financial resources. *Id.* This provision, however, does not address how the attorneys' fees are to be collected. *See Mullings v. Morgan*, 891 S.W.2d 15, 16-17 (Tex. App.—Eastland 1994, orig. proceeding) (Article 26.05 does not authorize seizure of unencumbered assets to pay costs.). In the present case, the court's ability to assess costs is not an issue. The complaint concerns the methods employed to collect those costs. Thus, article 26.05(g) simply is not implicated.

Likewise, *Curry v. Wilson*, 853 S.W.2d 40 (Tex. Crim. App. 1993), relied upon in *Gross*, is distinguishable from this case. In *Curry*, the trial court appointed legal counsel for the defendant. *Id.* at 42. After the defendant was acquitted, the trial court determined that, pursuant to article 26.05, the defendant was not indigent and informed the defendant that he would be required to pay the costs of legal services. *Id.* The defendant filed a writ of prohibition to the Court of Criminal Appeals

contending that article 26.05 violated the Due Process and Equal Protection Provisions of the Texas and Federal Constitution. *Id.* at 43-45. Because a court has the power to issue writs of prohibition only in criminal law matters, the court addressed whether it had jurisdiction. *Id.* at 43. The court noted that "[d]isputes which arise over the enforcement of statutes governed by the Texas Code of Criminal Procedure, and which arise as a result of or incident to a criminal prosecution, are criminal law matters." *Id.*

While the order in the instant case may have arisen as a result of, or incidental to, a criminal prosecution, the trial court's order does not arise over the enforcement of a statute governed by the Texas Code of Criminal Procedure. In fact, the order specifically provides "THE COURT ENTERS THIS ORDER pursuant to Government Code, Section 501.014 . . . ." Reed is not contesting the trial court's authority to assess court costs against him. Instead, the dispute is over the trial court's authority to collect the costs assessed under section 501.014(e) of the Texas Government Code. TEX. GOV'T CODE ANN. § 501.014(e). We note the legislature has determined that costs in criminal judgments may be collected through a civil execution process. TEX. CODE CRIM. PROC. ANN. art. 43.07 (Vernon Supp. 2008). Article 43.07 of the Texas Code of Criminal Procedure provides in relevant part: "[i]n each case of pecuniary fine, an execution may issue for the fine and costs . . . . The execution shall be collected and returned as in civil actions." *Id.* Consequently, we are unable to conclude that the trial court's order involves a criminal law matter as described in *Curry*.

### 2. *Final and Appealable*

Having determined that this matter is civil, we next address whether the trial court's order is final and appealable. The trial court's order in this case was for the collection of court costs through a post-judgment process. In civil actions, post-judgment orders may be appealed as final

orders if the order disposes of all matters placed before the court. *Wolma v. Gonzalez*, 822 S.W.2d 302, 304 (Tex. App.—San Antonio 1991, orig. proceeding), *disapproved on other grounds*, *Scott & White Mem. Hosp. v. Schexnider*, 940 S.W.3d 594, 596 n.2 (Tex. 1996); *see Cook v. Stallcup*, 170 S.W.3d 916, 920 (Tex. App.—Dallas 2005, no pet.) (stating "[p]ost-judgment orders embodying awards to claimants or enforcing the court's judgment itself are appealable orders; they function like judgments"). Both garnishment orders and turnover orders are appealable. *Schultz v. Fifth Jud. Dist. Ct. of Appeals*, 810 S.W.2d 738, 740 (Tex. 1991) (turnover orders appealable). Although there is no post-judgment motion in the record, the trial court's order leaves nothing for further decision. Indeed, that is the foundation of Reed's contention: there was no opportunity for him to challenge or contest the trial court's order either before or after it was issued.

In sum, the trial court's order in this case is an appealable order in that it is a final order and stems from a civil proceeding which was separate and independent from the judgment assessing Reed's conviction, sentence, and court costs. We now turn to the merits of Reed's claims in this appeal.

## B. Authority to Issue Order

Reed asserts that section 501.014(e) provides no authority for the trial court to have issued the collection order at issue in this appeal and, therefore, the order is "void." In support of this argument, Reed cites *Mullings v. Morgan*, 891 S.W.2d 15 (Tex. App.—Eastland 1994, orig. proceeding), for the proposition that while the trial court had authority to assess costs in the underlying judgment, it had no authority to order the manner in which those costs were to be collected. Id at 16-17 (granting mandamus against trial court order that required defendant to sell

her automobile in order to satisfy assessment of legal fees under prior version of article 26.05(g) of the Code of Criminal Procedure).

We do not agree that the trial court lacked authority. By making *notification by a court* the triggering event for the TDCJ's obligations under section 501.014(e), section 501.014(e) plainly authorizes the trial court to inform the TDCJ of an inmate's obligations to pay under one of the enumerated types of orders. *See, e.g., Fitzgerald v. Advanced Spine Fixation Sys., Inc.*, 996 S.W.2d 864, 865 (Tex. 1999) ("[I]t is cardinal law in Texas that a court construes a statute, first, by looking to the plain and common meaning of the statute's words.") (internal quotation omitted). To the extent the order at issue in this appeal served as notice to the TDCJ, it is not "void." *Id.*[3]

This holding, however, does not end the inquiry. Reed argues that the order was issued in violation of his due process rights to notice and an opportunity to be heard.[4]

### C.    Due Process

The Fourteenth Amendment of the United States Constitution guards against deprivation of life, liberty, or property by the State without due process of law. U.S. CONST. amend. XIV. Similarly, Article I, Section 19 of the Texas Constitution requires due course of law. TEX. CONST. art. I, § 19; *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001). At a minimum, due course requires notice and an opportunity to be heard, at a meaningful time and in a meaningful manner. *Perry*, 67 S.W.3d at 92.

---

[3] We express no opinion on whether the court's notification to the TDCJ can be by some means other than a formal order.

[4] Reed does not argue that section 501.014(e) is facially unconstitutional.

A procedural due process claim must establish (1) an existing liberty or property interest and (2) the procedures provided were constitutionally insufficient. *Id.* "A prison inmate has a property interest in his inmate trust account." *Covarrubias v. Tex. Dep't of Criminal Justice – Inst. Div.*, 52 S.W.3d 318, 324 (Tex. App.—Corpus Christi 2001, no pet.); *Brewer v. Collins*, 857 S.W.2d 819, 823 (Tex. App.—Houston [1st Dist.] 1993, no pet.). Reed, therefore, meets the first requirement. Thus, the question to be answered is what process is due before money from Reed's inmate trust account can be applied toward court costs.

### 1.    *The Mathews Balancing Test*

Courts utilize the three-part balancing test first announced in *Mathews v. Eldridge,* 424 U.S. 319 (1996), to determine whether procedural due process has been violated. *Univ. of Tex. Med. School v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). The factors to be balanced are:

(1)  the private interest that will be affected by the official action;
(2)  the risk of an erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedures; and
(3)  the government's interest, including, the function involved and the fiscal and administrative burdens that the additional substitute procedural requirement would entail.

*Id.; see also Washington v. Harper*, 494 U.S. 210, 229 (1990) (applying *Mathews* factors to prisoner's due process attack on prison policy).

### a.    The Private Interest Affected

Identifying the first factor is not difficult. The private interest affected is Reed's interest in his personal funds. We note, however, that inmates are not entitled to complete control over their money. *See Hatfield v. Scott*, 306 F.3d 223, 224-25 (5th Cir. 2002) (earned interest on prisoner's accounts may be used to pay for administration of beneficial fund).

### b.   The Risk of Erroneous Deprivation, and the Benefit of
### Additional Procedures

We next examine the second factor – the risk of erroneous deprivation of Reed's private interest through the procedures used, and the probable value of additional or substitute procedures. There are no procedures outlined in section 501.014 of the Government Code for either notice or an opportunity to be heard prior to the withdrawal of money from the inmate's account.[5] The risk of wrongful deprivation without some procedure for notice and hearing, however, is reduced because the notification of withdrawal must be based on some form of court order, judgment or writ. TEX. GOV'T CODE ANN. §§ 501.014(e)(1)-(6). Because the inmate would have been a party to the underlying action, notice and a hearing on the amounts assessed in the underlying court order, judgment or writ is satisfied. *Gross*, 2007 WL 2089365, at *1 (inclusion of costs and fees in judgment was notice to inmate he would be required to pay court costs and attorney fees); *see also Spradley v. Martin*, 897 F. Supp. 560, 565 (M.D. Fla. 1995) (inmate was afforded notice and opportunity to be heard with respect to court costs when state filed a motion for taxation of costs and the inmate filed a response thereto in the underlying action – no other hearing required before deprivation). Additionally, we note that most post-judgment collection processes do not require notice or a hearing before property may be levied. *See Ex Parte Johnson*, 654 S.W.2d 415, 418 (Tex. 1983) (notice and hearing prior to issuance of turnover order not required); *Endicott-Johnson Corp. v. Encyclopedia Press, Inc.*, 266 U.S. 285, 288 (1924) (notice and hearing before execution

---

[5] Although there is no specific procedure requiring notice, Reed received a copy of the Order for withdrawal of funds from his account.

unnecessary). Yet, execution, turnover and garnishment all provide an opportunity to replevy or for the judgment debtor to contest the method, amount, or irregularities associated with the collection.

In the present case, the assessment of cost was adjudicated during the criminal case and no complaint is made of the amount. Yet, clerical and other errors may occur and there are no procedures in place to dispute questionable withdrawal orders such as those presented in *Abdullah*, 211 S.W.3d at 940 (judgment did not contain assessment of costs and fees); *In re Keeling*, 227 S.W.3d 391, 392-93 (Tex. App.—Waco 2007, orig. proceeding) (supplemental bill of costs presented from prior conviction for which inmate had been paroled); and *In re Martinez*, 238 S.W.3d 601, 602 (Tex. App.—Waco 2007, orig. proceeding) (judgment assessed costs at $308, but withdrawal order sought $7,317.47). In this case, there was no opportunity for Reed to present his substantive claims regarding the merits of the order.[6] Thus, there is a risk under the current procedures of an erroneous deprivation of an inmate's interest without the opportunity to contest the withdrawal. We now examine the probable value of additional or substitute procedures.

In *Abdullah*, the court grafted garnishment procedures onto section 501.014(e) as a solution to due process concerns. We disagree, however, with the court's holding in *Abdullah* that the garnishment procedures set forth in section 63.007 of the Texas Civil Practice and Remedies Code are applicable to the inmate trust fund.[7] TEX. CIV. PRAC. & REM. CODE ANN. § 63.007 (Vernon

---

[6] Reed appears to assert that the state may not collect costs from his trust account because he is indigent and because the money in his trust account is from family and friends. We express no opinion on the validity of any such claims.

[7] Section 63.007 of the Texas Civil Practice and Remedies Code provides:

> (a) A writ of garnishment may be issued against an inmate trust fund held under the authority of the Texas Department of Criminal Justice under Section 501.014, Government Code, to encumber money that is held for the benefit of an inmate in the fund.

1997). A garnishment action is a procedure available to a judgment creditor by which he can inquire into the relationship between a third party and the judgment debtor to determine if there are any funds owed to the judgment debtor by the third party. *Id*. at §§ 63.001-.008. It requires a separate lawsuit against the third party consisting of an application supported by affidavits affirming that the defendant does not possess property in Texas subject to execution sufficient to satisfy the debt. It also requires a bond. TEX. R. CIV. P. 657-674. In the case before us, however, the creditor and the third party are effectively the same; the creditor is the State of Texas and the party holding the funds, the TDCJ, is an agency of the State. *See Martin v. Tex. Bd. of Criminal Justice*, 60 S.W.3d 226, 229 (Tex. App.—Corpus Christi 2001, no pet.) (recognizing that TDCJ is a state agency); *Lowe v. Tex. Tech Univ.*, 540 S.W.2d 297, 298 (Tex. 1976) (holding a suit against an agency of the state is a suit against the state). It is unlikely that the legislature envisioned that, under section 63.007, the State of Texas would have to sue its agency, the TDCJ, each time it sought to collect the costs assessed in an inmate's criminal judgment.[8] Section 63.007 merely waives sovereign immunity to suit for those outside creditors who seek to collect funds from inmate trust accounts. TEX. CIV. PRAC. & REM. CODE ANN. § 63.007. Garnishment procedures are not applicable or required to obtain inmate trust account funds under section 501.014. TEX. GOV'T CODE ANN. § 501.014.

---

(b) The state's sovereign immunity to suit is waived only to the extent necessary to authorize a garnishment action in accordance with this section.

TEX. CIV. PRAC. & REM. CODE ANN. § 63.007 (Vernon 1997).

[8] Section 63.007 was implemented in 1997 four years after the procedure for obtaining inmate funds was established by section 501.014(e). TEX. GOV'T CODE § 501.014(e) as added by Acts 1993, 73rd Leg., ch. 804, § 1, eff. Sept. 1, 1993.

c. The State's Interest, and Fiscal and Administrative Burdens of
Additional Procedures

While garnishment or other post-judgment remedies certainly would provide ample due process to inmates, we must balance the third factor of the government's interest including the fiscal and administrative burdens the additional procedures would require. The government's interest is the payment of court costs. The State has a significant interest in assuring that persons with financial resources pay their costs and "not take a free ride at the expense of its taxpayers." *Gross*, 2007 WL 2089365, at *1. The State's interest in maintaining administrative control over prisons and inmate accounts is also significant. Courts are not ideally situated to oversee the minute details of prison administration. *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974), *overruled on other grounds*, *Thornburgh v. Abbott*, 490 U.S. 401 (1989). Clearly, the implementation of all the procedural safeguards associated with turnover or garnishment would be highly burdensome and costly to the TDCJ and likely would result in the inability of the TDCJ to efficiently collect any of the judgments or orders referenced in section 501.014. *See Hickson v. Moya*, 926 S.W.2d 397, 399 (Tex. App.—Waco 1996, no writ) (recognizing flood of frivolous lawsuits filed by prison inmates consuming valuable judicial resources).

2. *Balancing the Mathews Factors in this Case*

In striking the proper balance between the three *Mathews* factors in this case, *Mahers v. Halford*, 76 F.3d 951 (8th Cir. 1996), a federal case involving restitution, is instructive. In *Mahers*, the court examined the due process to be accorded inmates before deductions were made from their trust accounts for restitution. *Id.* at 953-56. The court reviewed the procedural protections accorded the inmate, including the ability for any inmate, upon petition, to obtain review of any matter related

to an inmate's restitution plan or plan of payment at any time during the inmate's incarceration. *Id.* at 955-56. The feature distinguishing the procedure in *Mahers* from the current procedures available to Reed is that the inmate was provided some opportunity to be heard.

In balancing all three *Mathews* factors, we conclude that the lack of an opportunity to be heard regarding withdrawals from Reed's inmate trust account violated procedural due process requirements. This is not a case where the inmate was afforded *no* due process – the underlying final judgment, which Reed was free to contest post-judgment and on appeal, included the amount of the court costs, and Reed received a copy of the order authorizing the withdrawal of funds. Nonetheless, Reed's due process rights were violated because his claims regarding the merits of the order have not been heard in any forum.[9]

We are constrained, however, in fashioning a remedy because the trial court has not yet addressed the merits of Reed's claims contained in his "Pro Se Motion Objection to the Court's 10/23/2006 Order, for the Court to Withdraw the Order or in the Alternative for the Order to be Stayed Durining [sic] the Pendency of an Appeal," and thus there is nothing for us to review on appeal. Accordingly, we remand this action for further proceedings.

#### CONCLUSION

An order issued pursuant to section 501.014 of the Texas Government Code is civil in nature and may be a final appealable order. The order in this case is a final appealable order. Reed did not,

---

[9] We note that other statutes, such as Chapter 14 of the Texas Civil Practice and Remedies Code dealing with inmate litigation, provide for some type of forum in which inmates claims can be heard.

however, receive the minimum procedural due process requirements.  As a result, we reverse the order of the trial court and remand this cause for further proceedings consistent with this opinion.


Rebecca Simmons, Justice