



## OPINION

No. 04-11-00571-CV

**IN THE INTEREST OF D.L.D.**, a Child

From the 73rd Judicial District Court, Bexar County, Texas
Trial Court No. 2006-EM-503906
Honorable Nick Catoe Jr., Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Sandee Bryan Marion, Justice
Rebecca Simmons, Justice
Marialyn Barnard, Justice

Delivered and Filed:  June 13, 2012

AFFIRMED

Appellant, the father of D.L.D., appeals the trial court's order foreclosing on a child support lien and ordering liquidation and surrender of appellant's assets in his inmate trust account.  We affirm.

### BACKGROUND

On November 29, 2006, the trial court issued an Order in Suit Affecting the Parent-Child Relationship and ordered appellant to pay child support for the benefit of D.L.D.  Appellant was ordered to pay $25 per month for the child's medical support and $101 per month in retroactive child support.   D.L.D.'s mother, the custodial parent, did not, however, seek current child support and the trial court did not order appellant to pay current child support.

On May 24, 2010, the Office of the Attorney General ("OAG") issued a Notice of Lien to the Texas Department of Criminal Justice ("TDCJ") Inmate Trust Fund stating that appellant owed $1,270.15 in child support arrearages. This notice also stated that "prospective amounts of child support, not paid when due, are judgments that are added to the lien amount." Appellant was sent a copy of the Notice of Lien via certified mail on June 4, 2010.

On March 8, 2011, the OAG filed its First Amended Motion for Foreclosure of Child Support Lien. In the motion, the OAG argued that appellant had $123.95 in child support arrearages and $1,238.13 in medical support arrearages. In addition, the OAG argued that appellant had non-exempt personal property in his possession—namely, the funds in his inmate trust account. The OAG requested the trial court order appellant to surrender the assets held in his inmate trust account. Also on March 8, 2011, appellant filed a letter brief that contained legal arguments regarding his inmate trust account. He argued he did not receive due process and that he should not be deprived of his interest in the inmate trust account without a hearing. He then requested a telephone hearing on the issue, but the trial court denied his request.

On July 28, 2011, after notice of the setting was provided to appellant, the trial court held a hearing on the OAG's motion without the presence of appellant. The trial court ultimately signed a Default Order Foreclosing Child Support Lien, acknowledging that appellant received notice of the hearing but did not appear at the hearing, and further stating that appellant "filed an answer and letter brief which were considered by the court." In the order, the trial court found and confirmed appellant (1) owed $129.56 in child support arrearages and $1,554.21 in medical support arrearages, and (2) had non-exempt personal property in his possession (the inmate trust account). The trial court also ordered the foreclosure of the child support lien and ordered the liquidation and surrender of the assets in appellant's inmate trust account.

**TELEPHONE HEARING**

In his second issue on appeal, appellant complains the trial court abused its discretion when it denied his request for a telephone hearing on the OAG's motion to foreclose the child support lien. We review the ruling for an abuse of discretion. *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003).

A litigant cannot be denied access to a court simply because he is an inmate. *Id.* On the other hand, inmates do not have an absolute right to appear in person in every court proceeding. *Id.* An inmate's right to court access must be weighed against the protection of the integrity of our correctional system. *Id.* Texas courts use numerous factors in determining whether an inmate's personal presence is necessary in court proceedings, including: whether a prisoner's claims are substantial; whether a prisoner can and will offer admissible, noncumulative testimony that cannot be effectively presented by some other means; and a prisoner's probability of success on the merits. *Id.* at 165–66. Because "a prisoner has no absolute right to be present in a civil action, it follows that the prisoner requesting a [personal presence] must justify the need for his presence." *Id.* at 166. If a court determines that a pro se inmate is not entitled to appear personally or by telephone in court, the inmate should be allowed to proceed by deposition, affidavit, or other means. *In re R.C.R.*, 230 S.W.3d 423, 426 (Tex. App.—Fort Worth 2007, no pet.).

Here, the hearing on the motion was held without appellant's presence; however, appellant's letter brief was considered by the trial court at the hearing. Within his letter brief, appellant argued his due process rights were violated regarding his private interest in his inmate trust account and he made factual assertions regarding the reasons why he needed to retain the funds in this account. The trial court found that appellant's answer and brief were considered by

the court. Thus, appellant had the opportunity to be heard "by other means" and was allowed "to present evidence or contradict the evidence of the opposing party." *See id.* ("The right of a prisoner to have access to the courts entails not so much his personal presence as the opportunity to present evidence or contradict the evidence of the opposing party."). Accordingly, we conclude the trial court did not abuse its discretion in denying appellant's request for a telephone hearing.

## DUE PROCESS

In his first issue on appeal, appellant contends he was denied due process when the trial court ordered the foreclosure of the lien against his inmate trust account. He asserts that (1) he had a property interest in the account, (2) he did not receive proper notice of the lien, and (3) he did not receive an opportunity to be heard regarding the issues he raised in his letter brief to the court.

The Fourteenth Amendment of the United States Constitution guards against the deprivation of life, liberty, or property by the State without due process of law. U.S. CONST. amend. XIV. Likewise, article I, section 19 of the Texas Constitution requires due course of law before a citizen is deprived of his property. TEX. CONST. art. I, § 19; *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001). Minimally, due course requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Del Rio*, 67 S.W.3d at 92.

A procedural due process claim must establish (1) an existing liberty or property interest and (2) the procedures provided were constitutionally insufficient. *Reed v. State*, 269 S.W.3d 619, 624 (Tex. App.—San Antonio 2008, no pet.); *Covarrubias v. Tex. Dep't of Criminal Justice—Inst. Div.*, 52 S.W.3d 318, 324 (Tex. App.—Corpus Christi 2001, no pet.). An inmate has a property interest in a prison inmate trust account. *Reed*, 269 S.W.3d at 625. Thus,

appellant has met the first requirement. The next question to be determined is whether the procedures used by the OAG were constitutionally insufficient.

## A.  The *Mathews* Balancing Test

Based on *Mathews v. Eldridge*, a three-part balancing test is used to determine whether procedural due process has been violated. 424 U.S. 319, 334–35 (1976); *Reed*, 269 S.W.3d at 625. The factors to balance are:

(1) the private interest that will be affected by the official action;

(2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;

(3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 334–35; *Reed*, 269 S.W.3d at 625.

### 1.  Private Interest Affected by Official Action

As stated above, appellant has a private interest in his own inmate trust account. *Reed*, 269 S.W.3d at 625; *Covarrubias*, 52 S.W.3d at 324. Additionally, at a minimum, state law requires procedures that ensure an inmate's property right is not arbitrarily abrogated. *Covarrubias*, 52 S.W.3d at 324. Thus, we conclude appellant has satisfied this first requirement.

### 2.  Risk of Erroneous Deprivation of Private Interest through Procedures Used

To evaluate the second factor, we examine the risk of erroneous deprivation of appellant's private interest through the procedures used by the OAG, and the probable value of additional or substitute procedures. *See Mathews*, 424 U.S. at 335; *Reed*, 269 S.W.3d at 625. Here, the OAG used the procedure under the Texas Family Code to foreclose on appellant's inmate trust account. *See* TEX. FAM. CODE ANN. §§ 157.311–.314, .317, .319, .323 (West 2009). Under this procedure, the claimant must first file notice of the child support lien. TEX. FAM.

CODE ANN. § 157.314.  The notice may be sent to any "individual or organization believed to be in possession of real or personal property of the obligor."  *Id.* § 157.314(b)(3).  The obligor is also entitled to notice of the child support lien no later than twenty-one days after the claimant files notice of the child support lien with the person or organization in possession of the obligor's real or personal property.  *Id.* § 157.314(c).

Next, to foreclose on the child support lien, the claimant must file an action to foreclose the child support lien in (1) the court in which the lien notice was filed; (2) the district court of the county in which the property is or was located; or (3) the court of continuing jurisdiction.  *Id.* § 157.323.  The procedures for service of a foreclosure action—including the setting of a hearing, notice, and appearance—are controlled by sections 157.061–.066 of the Family Code. *Id.* § 157.061–.066.  Finally, if the obligor owes child support arrearages, the trial court must then (1) render judgment for the amount due; and (2) order an individual or organization possessing the real or personal property to dispose of the property as directed by the trial court. *Id.* § 157.323(c).

Here, the OAG followed the procedures laid out in chapter 157 of the Family Code.  On May 24, 2010, the TDCJ was sent notice of the child support lien.  Additionally, appellant was sent a copy of this notice on June 4, 2010—well-within twenty-one days after notice was received by the TDCJ.  *See id.* § 157.314(c).  Thus, appellant received timely notice of the OAG's lien on his inmate trust account.  The OAG also followed the procedures for foreclosing on the lien when it filed its First Amended Motion for Foreclosure of Child Support Lien on March 8, 2011.  While appellant was not present at the hearing on this motion, the record supports that appellant had an opportunity to be heard because the trial court notated that he "filed an answer and letter brief which were considered by the court" at the hearing.  *See In re*

*R.C.R.*, 230 S.W.3d at 426. Thus, we conclude appellant was not erroneously deprived of his private interest by the procedures used by the OAG. In fact, the procedures used by the OAG significantly reduced the risk of any erroneous deprivation of appellant's private interest.

### 3. Government's Interest in Procedures Used

In this last factor, we assess the government's interest, including the fiscal and administrative burdens of added or alternative procedures. Here, the government's interest is receiving re-payment of child support and medical care arrearages. "The State has a significant interest in assuring that persons with financial resources pay their costs and not take a free ride at the expense of its taxpayers." *Reed*, 269 S.W.3d at 627 (citation and internal quotation marks omitted). To receive re-payment, the OAG used the procedural requirements set forth in chapter 157 of the Family Code. These requirements include notice and an opportunity for a hearing. A less burdensome procedure—which the OAG did not choose—was available in section 501.014(e) of the Government Code. *See Harrell v. State*, 286 S.W.3d 315, 320 (Tex. 2009) (acknowledging section 501.014(e) does not require comprehensive garnishment procedures). Thus, by foreclosing the inmate trust account under chapter 157, the OAG chose to use the more extensive and burdensome procedure.

### B. Balancing the *Mathews* Factors

In balancing the three *Mathews* factors, we conclude appellant's due process complaints regarding notice and hearing are without merit. Appellant's due process rights were not violated because he received adequate notice of the OAG's motion to foreclose on his inmate trust account and he had an adequate opportunity to be heard at the hearing on the motion to foreclose. Furthermore, the OAG used the procedural safeguards in the Family Code to ensure appellant was not erroneously deprived of his private interest.

**ASSIGNMENT OF RIGHT TO COLLECT CHILD SUPPORT**

In his last issue on appeal, appellant argues the trial court abused its discretion when it ordered the foreclosure of the child support lien because D.L.D.'s mother, the custodial parent, never requested child support in the original child support order and did not participate in the hearing on the OAG's motion to foreclose. We believe appellant's claim is without merit because the OAG has the right to collect child support arrearages pursuant to an assignment.

Title IV-D of the Social Security Act requires a state to provide services relating to the enforcement of child support obligations for a child who receives government assistance payments, including medical assistance, and for a child whose guardian requests the services. 42 U.S.C. § 654(4) (2009); *In re A.M.E.*, 71 S.W.3d 401, 402 (Tex. App.—San Antonio 2001, no pet.). In Texas, the OAG is designated to provide the Title IV-D services. TEX. FAM. CODE ANN. § 231.001; *In re A.M.E.*, 71 S.W.3d at 402. Therefore, the OAG is entitled to collect and distribute child support payments and to enforce child support orders. TEX. FAM. CODE ANN. § 231.101; *In re A.M.E.*, 71 S.W.3d at 403. The Family Code also authorizes an enforcement action to reduce unpaid child support to judgment. TEX. FAM. CODE ANN. § 157.263; *In re A.M.E.*, 71 S.W.3d at 403. Within the order of priority established by section 157.268, collected child support shall be applied to the principal amount of child support that has been confirmed and reduced to money judgment. TEX. FAM. CODE ANN. § 157.268(4); *In re A.M.E.*, 71 S.W.3d at 403.

Importantly, when the OAG provides Title IV-D services, it becomes entitled to an assignment of child support rights. TEX. FAM. CODE ANN. § 231.104; *In re A.M.E.*, 71 S.W.3d at 403. Thus, support rights assigned to the OAG must be made payable to the OAG. TEX. FAM.

CODE ANN. § 231.105(a); *In re A.M.E.*, 71 S.W.3d at 403. Similarly, any amount in arrearage also belongs to the OAG by virtue of the assignment. *In re A.M.E.*, 71 S.W.3d at 403.

Here, although D.L.D.'s custodial parent did not request current child support payments, the OAG was assigned the right to collect medical support payments and previous child support arrearages pursuant to its Title IV-D services. As a result, the OAG, by assignment, had the right to collect child support payments and use all remedies provided to it under the Family Code. Accordingly, we conclude the trial court did not abuse its discretion in ordering the foreclosure of the child support lien.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the judgment of the trial court.

Sandee Bryan Marion, Justice